# EXHIBIT 1



# Notice of Service of Process

**TRL / ALL**
**Transmittal Number: 22709647**
**Date Processed: 02/04/2021**

| | |
|---|---|
| Primary Contact: | Venessa C. Wickline Gribble<br>The Kroger Co.<br>1014 Vine Street<br>Cincinnati, OH 45202-1100 |
| Entity: | The Kroger Co.<br>Entity ID Number  2171751 |
| Entity Served: | The Kroger Co. |
| Title of Action: | Elizabeth McGuire vs. The Kroger Co. |
| Matter Name/ID: | Elizabeth McGuire vs. The Kroger Co. (10923917) |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Personal Injury |
| Court/Agency: | Cobb County State Court, GA |
| Case/Reference No: | 21-A-341 |
| Jurisdiction Served: | Georgia |
| Date Served on CSC: | 02/03/2021 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Edward D. Buckley<br>404-781-1100 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

## STATE OF GEORGIA

CIVIL ACTION NUMBER 21-A-341

$198.00 COST PAID

McGuire, Elizabeth

**PLAINTIFF**

VS.

The Kroger Co.

**DEFENDANT**

### SUMMONS

TO: THE KROGER CO.

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Edward D Buckley**
**Buckley Beal, LLP**
**600 Peachtree Street NE**
**Suite 3900**
**Atlanta, Georgia 30308**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If this action pertains to a Protective Order, the Answer is to be filed and served on or before the scheduled hearing date attached. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 1st day of February, 2021.**

Clerk of State Court

Robin C. Bishop, Clerk of State Court
Cobb County, Georgia

EFILED IN OFFICE
CLERK OF STATE COURT
COBB COUNTY, GEORGIA

**21-A-341**

JAN 30, 2021 10:49 PM

*Robin C. Bishop*
Robin C. Bishop, Clerk of State Court
Cobb County, Georgia

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

| | |
|---|---|
| ELIZABETH MCGUIRE, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : Civil Action File No.: |
| | : |
| | : Jury Trial Demanded |
| THE KROGER CO., | : |
| | : |
| Defendant. | : |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, **ELIZABETH MCGUIRE**, by and through her undersigned counsel of record, and files this Complaint for Damages against Defendant The Kroger Co., by respectfully showing this Honorable Court the following:

### I.
### PARTIES AND JURISDICTION

1. Plaintiff is a resident of the State of Georgia.

2. Defendant The Kroger Co. ("Kroger") is a foreign corporation incorporated under the laws of the State of Ohio with its headquarters located at 1014 Vine Street, Cincinnati, Ohio 45202. Defendant Kroger may be served with process through its Georgia registered agent for service of process CSC of Cobb County, Inc., at 192 Anderson Street, SE, Suite 125, Marietta, Georgia 30060.

3. This Court has jurisdiction over all the parties to this lawsuit and all the claims set forth in this Complaint.

4. Cobb County is the proper venue for Plaintiff's claims, as Kroger's registered agent is in Cobb County.

## II.
## STATEMENT OF FACTS

5. Upon information and belief, Defendant Kroger's Store 629 is located at 125 E. Main Street Market Place, Cartersville, Georgia, 30121, (hereinafter referred to as "Store 629").

6. Dillon Sexton ("Sexton"), an adult male, was an employee of Kroger and, until October 2018, worked at Store 629.

7. On or around November 2017, Plaintiff Elizabeth McGuire (hereinafter "Ms. McGuire" or "Plaintiff"), while still a minor, began working as a Kroger employee at Store 629.

8. Initially, Ms. McGuire had a workplace friendship with Sexton but, when she stopped dating another male coworker, he began to engage in a practice of constant sexual harassment.

9. At all times, Ms. McGuire attempted to maintain a friendly, professional relationship with Sexton and, accordingly, Sexton's sexual advances upon her were unexpected, uninvited, and she resisted them.

**Sexton Sexually Harasses Ms. McGuire at Work and Stalks Her Outside Work**

10. In or around late May 2018, Sexton became openly hostile to Ms. McGuire's ex-boyfriend at Kroger, making work so unpleasant he eventually resigned.

11. At this time, Sexton also falsely told Ms. McGuire's Kroger coworkers that he was her new boyfriend.

12. In or around this time, Sexton also began to follow Ms. McGuire around Store 629 and, without permission, put his arms around her. When he did so, she shrugged him off or moved away from him.

13. In or around this time, Sexton became possessive over Ms. McGuire and forbade her from talking to her ex-boyfriend (who was still a coworker at the time) while at work, because he believed she was flirting.

14. Sexton also forbade Ms. McGuire from interacting with other coworkers and male customers, interfered with her work duties that involved interacting with male customers, and asked other coworkers to report back to him about her interactions.

15. In or around June 2018, Sexton began giving Ms. McGuire and her family money, gift cards, and gifts that they did not ask for, even after they refused them.

16. Throughout the summer of 2018, Sexton arrived uninvited at Ms. McGuire's home, often timing his visits to coincide with times when her mother was convalescing from medical treatment or her father was at work, and he became angered when her parents asked him to leave or refused to allow him to enter the house.

17. One night, between July and August 2018 and the hours of 12 and 1 a.m., Sexton arrived uninvited at Ms. McGuire's home while her father was at work.

18. Sexton took a photograph of Ms. McGuire's home, sent it to her via Snapchat, and asked if she would come outside to hug him, which she refused.

19. Sexton also took photographs of his genitalia and videos of him masturbating that he sent to Ms. McGuire over Snapchat and repeatedly asked her to send him nude photos, which request she refused.

20. During the period between July and August 2018, while they were at Store 629, Sexton often slapped or touched Ms. McGuire's buttocks without her permission or forced himself on her and grabbed her face to kiss her on the mouth.

21. Ms. McGuire's coworkers at Store 629 witnessed some of these instances and,

rather than intervening, some encouraged Sexton's harassment by stating "get a room" or "get some."

22. Ms. McGuire is a childhood victim of domestic sexual assault and suffers from related psychological symptoms.

23. As a result, when Sexton touched Ms. McGuire without her consent, her responses varied and included freezing, attempting to move, or waiting for him to stop.

### Sexton Cuts Himself and Threatens to Physically Harm Ms. McGuire When She Resists Sexual Harassment

24. On or about September 10, 2018, after Ms. McGuire told Sexton that she wanted him to leave her alone, he texted her a photograph of his leg, which he had cut with a Kroger box cutter.

25. Sexton told Ms. McGuire that he had tried to carve her name into his leg but only carved the E and L because her name was too long.

26. Alarmed and fearful that Sexton would further harm himself or others, Ms. McGuire texted Sexton's father to relay that he had cut himself.

27. When Sexton discovered that Ms. McGuire had done this, he sent her expletive-laden Instagram messages admonishing her.

28. As a result of his alarming, unwanted, and incessant contact, Ms. McGuire blocked Sexton's communications.

29. On or about September 12, 2018 while Ms. McGuire was working at the self-checkout, Sexton tried to hug her and placed his hands on her buttocks.

30. When Ms. McGuire told Sexton to stop and remove his hands, he told her that was "where they belonged."

31. When Sexton removed his hands from Ms. McGuire's body, he took out the box

cutter he had presumably used to cut his leg, flicking it open and closed while looking at her, before he walked away.

32. This was not the first time Sexton had used his Kroger-issued box cutter to threaten a female coworker. In the past, he had threatened to "cut" a female coworker who joked about being Ms. McGuire's wife.

33. Ms. McGuire felt physically threatened and was scared to report Sexton because she feared he would harm her or others.

34. Throughout that day, Sexton continued to harass Ms. McGuire, attempting to hug her without permission and interrupt her while she was interacting with male customers or coworkers.

35. Later that day, one of Ms. McGuire's coworkers, Travis Stocks, who had witnessed Sexton's behavior, purchased pepper spray for her so she could protect herself.

**Ms. McGuire Formally Reports Sexton to Kroger for Sexual Harassment**

36. After discussing the September 12 incident with her parents, Ms. McGuire resolved to formally report Sexton's conduct to her managers at Store 629.

37. Another of Ms. McGuire's coworkers, Ian Rosyn, who had witnessed Sexton's conduct and her ensuing fear in the workplace, also reported Sexton's conduct to the manager, Mr. Sheehan.

38. On or about September 14, 2018, Ms. McGuire went to Mr. Sheehan's office with Rosyn to report the sexual harassment and write a statement.

39. Later that day, when Ms. McGuire was on a lunch break, Sexton came to her table and sat down.

40. Alarmed and fearful, Ms. McGuire ran to the women's restroom and called her

mother in tears, who advised her to find the Store Manager.

41. When Ms. McGuire exited the women's restroom, Sexton was still there and attempted to reach for her.

42. Ms. McGuire was able to escape Sexton and report the incident to Mr. Frank, another Store Manager, who ensured that Sexton was called back to his workstation so that Ms. McGuire could finish lunch unmolested.

43. After this, although she had blocked him, Sexton continued to attempt to contact Ms. McGuire through coworkers.

44. Consequently, on September 15, 2018, Ms. McGuire contacted the Bartow County Sheriff's Office to report that he was continuing to harass her, and an officer telephoned Sexton to warn him to stop contacting her.

45. On or around October 2018, Kroger informed Ms. McGuire that they had moved Sexton to a different store and banned him from Store 629.

46. During this same meeting, Ms. McGuire was asked to read over Kroger's sexual harassment guidelines and sign a paper.

47. Notably, Ms. McGuire, who was a minor at the time, was not permitted to have her guardians or a legal representative present nor was she given a copy of these documents for her records.

48. Upon information and belief, Kroger subsequently fired Sexton on or before December 2018.

**Kroger Retaliates Against Ms. McGuire for Reporting Sexual Harassment**

49. After Ms. McGuire reported Sexton, her hours—and, consequently, her pay—were essentially cut in half, from almost a full-time schedule of 40 hours a week to

approximately 20 hours a week.

50. Store Managers also spoke to other employees, who were not involved in Ms. McGuire's complaint, about her sexual harassment complaint and created an environment rife with rumors that caused Ms. McGuire's coworkers to treat her differently at work, ridiculing her sexual harassment account, and isolating or further harassing her when she refused to engage in these discussions.

51. For example, in her presence, coworkers made comments like "don't touch me or I'll have to report you for sexual harassment too" and "well, you guys dated so it isn't sexual harassment that he touched your butt."

52. When Ms. McGuire tried to talk to a female manager about the situation, she responded, "Oh well, that's why we don't date coworkers."

53. Comments were made about the "reputation" Ms. McGuire was creating for herself by filing a sexual harassment complaint and it was suggested that because she had previously dated a male coworker, she was "making her way around the store."

54. Comments were made about the way Ms. McGuire's body looked to justify Sexton's harassment, such as, "well with an ass like that" or "you're just a beautiful/ sexy/mature/etc. girl."

55. Multiple coworkers suggested to Ms. McGuire that she should have sex with Sexton because he was a virgin and when she refused, they told her she could "spice things up in the bedroom" with him by buying outfits or letting him do things to her.

56. These same coworkers told Ms. McGuire that she did not have to file a sexual harassment claim when she could have let those coworkers talk to Sexton and "make him stop."

57. In Ms. McGuire's presence and during work hours, female coworkers made sexual innuendos while watching sexually explicit videos, including mocking her sexual harassment complaints, describing what they would let the people in the videos do to them or how they wanted it done to them, or how they would do that to male managers or coworkers.

**Kroger Allows Sexton to Stalk and Harass Ms. McGuire at Store 629**

58. Despite purportedly being banned from Store 629, between November and December 2018, Sexton entered the store, sat at the in-store Starbucks, and waited for Ms. McGuire to come downstairs from a team meeting.

59. When Ms. McGuire came out of her meeting and returned to her workstation, Sexton sat and watched her until she finished her shift and left Store 629.

60. Ms. McGuire was told that Sexton returned to Store 629 later that day, after she had left, and that management told him to leave and not come back.

61. In the second week of January 2019, Sexton again entered Store 629 and told one of Ms. McGuire's coworkers that he had been cleared by the union and wanted to reconnect with her.

62. When Ms. McGuire learned that Sexton was in Store 629 trying to contact her, she asked management why he was permitted in the store and she was told that, since the union "cleared him," they could not and would not ban him.

63. However, when Plaintiff's mother, Mrs. McGuire, emailed Kroger's CEO about the issue, the District Manager, Mrs. Jacobs, spoke with Mrs. McGuire and informed her that Kroger could and would ban Sexton and she would speak to the manager of Store 629.

64. The next shift that Ms. McGuire worked, her managers and department lead called her into a meeting to go over what sexual harassment was and again she was asked to read and sign documents without her guardian, a lawyer, or a copy of them.

65. The manager who made Ms. McGuire sign these documents openly flirted with female workers he found attractive such that they later commented to Ms. McGuire, "If you'd flirt with him, he'd be nicer to you." She replied, "I'm not going to flirt with him just so they take the harassment seriously."

66. She was told that if Sexton were to come into Store 629 and she felt uncomfortable, she could tell management and they would make him leave or call the police, if needed.

67. On February 1, 2019, Sexton again entered Store 629 at around 3:30 p.m.

68. Ms. McGuire asked a woman working at the Starbucks to page management and then hid in the women's restroom in fear, as Sexton approached the restroom area.

69. When other female coworkers came to her aid and she exited the restroom area, Ms. McGuire saw that Sexton was sitting in the Starbucks with another coworker about 10 feet away from the restroom area.

70. Ms. McGuire, sobbing and experiencing a panic attack, again went to hide in the women's restroom until other coworkers could ensure she could safely go to an upstairs conference area without encountering Sexton.

71. Ms. McGuire was left alone in the conference room where she called her mother.

72. Her mother, Mrs. McGuire, called Kroger and spoke with Store 629's manager, Mr. Wall, who told her that they would not ban Sexton and that if she wanted anything done, she had to do it herself.

73. Mrs. McGuire then called 911 and told Ms. McGuire that she and the police were on their way to Store 629.

74. While Ms. McGuire waited for her mother and the police, she was paged to return to the self-checkout area, which she did.

75. About five minutes later, Ms. McGuire saw that Sexton was still in Store 629 next to a coworker and a member of the store's management team who, apparently, did nothing to prevent him from continuing to stalk Ms. McGuire.

76. A few minutes later, Ms. McGuire's mother arrived and Sexton approached her.

77. Mrs. McGuire attempted to maintain 15 feet of distance from Sexton and asked him why he was in the store after being banned from it and fired from Kroger.

78. Sexton said he was "cleared" to be in the store by a Kroger union representative.

79. A police officer arrived shortly thereafter and said he could not do anything without Kroger's consent, but advised Ms. McGuire to file a temporary order of protection ("TPO").

80. During this time, Sexton exited Store 629 and went to sit in his car in the parking lot for several minutes before approaching the police officer.

**Because Kroger Fails to Protect Her, Ms. McGuire Secures Judicial Intervention**

81. On February 7, 2019, Ms. McGuire requested and received an *ex parte* TPO from the Bartow County Superior Court, which prohibited Sexton from contacting her (either directly or indirectly) or being within 150 feet of her person, home, school, or place of employment and charged all law enforcement officers with enforcing the same.

82. On the same day of her court hearing, Ms. McGuire received Instagram messages

from a woman named Jade who claimed to be friends with Sexton, stating that he had sent her screenshots of Ms. McGuire's social media photographs of her and her family.

83. Jade stated that Sexton had sexually harassed and stalked other female minors and coworkers, including asking them to send him nude photographs and threatening to blackmail them if they rejected his advances or communications.

84. On February 20, 2019, the Bartow County Superior Court extended the TPO to a twelve-month stalking protection order.

85. Sexton violated this order on December 28, 2019 by going to Ms. McGuire's new place of work.

86. Although Ms. McGuire filed a report with the Cartersville Police Department and asked to press charges, they refused to arrest him.

87. Hence, prior to the expiration of her TPO, Ms. McGuire made a motion for a permanent protective order, which the Bartow County Superior Court granted on February 19, 2020.

### Ms. McGuire's Injuries and Kroger's Culpability

88. As a result of Sexton's actions and Kroger's failure to prevent or mitigate them, Ms. McGuire suffers from insomnia, anxiety, weight loss, inability to have romantic relationships with men, self-doubt, self-loathing, and many other infirmities.

89. During the tenure of Ms. McGuire's employment, Defendant Kroger failed to adequately instruct Ms. McGuire on its sexual harassment policies.

90. During the tenure of Ms. McGuire's employment, Defendant Kroger failed to

instruct Ms. McGuire on its sexual harassment reporting procedures.

91. During the tenure of Ms. McGuire's employment, Defendant Kroger failed to provide Ms. McGuire with adequate sexual harassment training.

92. Upon information and belief, Sexton has a history of sexually harassing other women, especially minors and coworkers, including at Kroger.

93. Defendant Kroger knew or should have known of Sexton's propensity for sexual harassment.

94. Managers at Store 629 were aware that Sexton was sexually harassing Ms. McGuire.

95. Upon information and belief, Kroger was aware of other complaints of Sexton's improper sexual behavior.

96. Upon information and belief, instead of terminating Sexton and banning him from Store 629, Kroger simply moved Sexton from Store 629 to another Kroger location, but took no action to prevent his future harassment of other employees and women at this new location.

97. After Sexton was transferred, Kroger allowed him to continue to stalk Ms. McGuire while she was working at Store 629, despite its awareness of complaints of his frightening and sexually inappropriate behavior.

98. Defendant Kroger failed to provide its employees in non-management positions with adequate or sufficient training and instruction on its sexual harassment policies and reporting procedures.

99. Defendant Kroger failed to provide its employees in supervisory and management positions with adequate or sufficient training and instruction on its sexual

harassment policies and reporting procedures.

100. Defendant Kroger failed to properly train and supervise Sexton and Store 629 employees to prevent and mitigate sexual harassment.

101. Defendant Kroger negligently retained Sexton after learning of his sexual harassment of its employees.

102. Defendant Kroger's failure to supervise Sexton, failure to terminate him, and failure to keep him out of Store 629, thereby exposing Ms. McGuire to continued danger of assault and battery, as well as continued emotional distress, constituted a continuing violation of Ms. McGuire's rights under Georgia law.

103. Ms. McGuire was injured as a result of Defendant Kroger's acts and omissions.

## COUNT I
### Negligent Infliction of Emotional Distress

104. Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

105. Defendant Kroger, through its supervisors and managers, knew or should have known of Sexton's acts and pattern of sexual harassment of female employees, including Ms. McGuire.

106. Defendant Kroger's conduct toward Ms. McGuire was negligent and reckless.

107. As a result of Defendant Kroger's negligent conduct, Ms. McGuire suffered physical impact, physical harm, and severe emotional distress.

108. Defendant Kroger's failure to supervise Sexton, failure to terminate him, and failure to keep him out of Store 629, thereby exposing Ms. McGuire to continued danger of assault and battery, as well as continued emotional distress, constituted a continuing violation of Ms. McGuire's rights under Georgia law.

109. Plaintiff demands judgment against Defendant Kroger in an amount to be

determined at trial, inclusive of interest, costs, late fees, and penalties.

## COUNT II
### Negligent Hiring, Retention, and Supervision

110. Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

111. Sexton was employed by Defendant Kroger for several years.

112. During Sexton's employment, he engaged in the constant and severe sexual harassment of Ms. McGuire as well as other female employees at Kroger.

113. During Sexton's employment, he engaged in assault and battery of Ms. McGuire as well as intentional infliction of emotional distress.

114. Prior to the date of February 1, 2019, Defendant Kroger was made aware of Sexton's stalking and outrageous and wrongful sexually harassing conduct on multiple occasions.

115. Defendant Kroger failed or refused to take action to redress Sexton's wrongful sexually harassing conduct.

116. Defendant Kroger failed to supervise Sexton during his employment.

117. Defendant Kroger failed to keep Sexton out of Store 629 while Ms. McGuire was working, exposing her to further harassment, stalking, and severe emotional distress.

118. Defendant Kroger's failure to supervise Sexton was the direct and proximate cause of Ms. McGuire's injury.

119. Defendant Kroger has a duty to exercise ordinary care not to hire or retain an employee that the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the

Plaintiff.

120. Kroger failed to exercise ordinary care in the hiring and/or retention of Sexton.

121. Defendant Kroger's negligent hiring, retention, and lack of supervision of Sexton was the direct and proximate cause of the injuries suffered by Ms. McGuire.

122. Defendant Kroger's failure to supervise Sexton, failure to terminate him and failure to keep him out of Store 629, thereby exposing Ms. McGuire to continued danger of assault and battery, as well as continued emotional distress, constituted a continuing violation of Ms. McGuire's rights under Georgia law.

123. Plaintiff demands judgment against Defendant Kroger in an amount to be determined at trial, inclusive of interest, costs, late fees, and penalties.

## COUNT III
## Punitive Damages

124. Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

125. Defendant engaged in willful misconduct, malice, wantonness, oppression, and an entire lack of care with a conscious indifference to the consequences experienced by Ms. McGuire.

126. In negligently retaining Sexton even though it had real or constructive knowledge of his tendency to sexually harass women in the workplace, Kroger exhibited a want of care sufficient to raise a presumption of conscious indifference to the consequences of Sexton's actions.

127. Had Kroger exercised reasonable care to prevent Sexton's harassment, it could have prevented the harm Ms. McGuire suffered.

128. Ms. McGuire was injured as a result of Defendant's willful misconduct.

129. Defendant Kroger's failure to supervise Sexton, failure to terminate him, and failure

to keep him out of Store 629, thereby exposing Ms. McGuire to continued danger of assault and battery, as well as continued emotional distress, constituted a continuing violation of Ms. McGuire's rights under Georgia law.

130. Ms. McGuire is entitled to a recovery of punitive damages against Defendant.

## COUNT IV
### Attorneys' Fees

131. Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

132. Defendant acted in bad faith and has caused Plaintiff unnecessary trouble and expense.

133. Pursuant to O.C.G.A. § 13-6-11, Plaintiff demands that Defendant reimburse her attorneys' fees incurred in this litigation.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

(a) That Plaintiff recover damages on Count I of her Complaint for Defendant's Negligent Infliction of Emotional Distress;

(b) That Plaintiff recover damages on Count II of her Complaint for Defendant's Negligent Hiring, Retention, and Supervision of Sexton;

(c) That Plaintiff recover damages on Count III of her Complaint for Punitive Damages against Defendant;

(d) That Plaintiff recover damages on Count IV of her Complaint for attorneys' fees against Defendant;

(e) That Plaintiff recover all interest, costs, fees, and penalties in an amount to be proven at trial; and

(f) That Plaintiff recover such other and further relief as is just and proper.

This 30th day of January, 2021.

**BUCKLEY BEAL, LLP**

*s/ Edward D. Buckley*
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@buckleybeal.com
Emma C. Bellamy
Georgia Bar No. 288619
ebellamy@buckleybeal.com

600 Peachtree Street, Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101